IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| ASTARTE DAVIS-RICE, ) | No. C 05-0869 MMC (PR) |
| ) | |
| Petitioner, ) | **ORDER DENYING PETITION FOR A** |
| ) | **WRIT OF HABEAS CORPUS** |
| v. ) | |
| ) | |
| SCHEILA A. CLARK, WARDEN, ) | |
| et al., ) | |
| ) | |
| Respondents. ) | |
| _____ | |

    Astarte Davis-Rice, a federal prisoner currently incarcerated at the Federal Correctional Institution, Dublin, California ("FCI Dublin") and proceeding pro se, filed the above titled petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2241. After reviewing the petition, the Court ordered respondent to show cause why the petition should not be granted. Respondent has filed an answer, accompanied by a supporting memorandum and exhibits. Petitioner has filed a traverse.

## BACKGROUND[1]

    Petitioner's former common law husband, James Rice ("Rice"), disappeared in July 1986. After his disappearance, petitioner prepared a fictitious will in which Rice purportedly

---

[1] This factual background is not disputed, and is derived from the published opinion in petitioner's direct appeal, Government of the Virgin Islands v. Davis, 43 F.3d 41, 43, n. 2 (3d Cir. 1994), as well as the exhibits filed by petitioner and respondent.

bequeathed most of his estate to petitioner. Petitioner altered Rice's Power of Attorney to allow her to control his assets and affairs. She also forged a warranty deed to transfer Rice's real estate to herself, and forged Rice's signature on several checks and contracts involving Rice's boat. In connection with a lawsuit petitioner filed to quiet title to the property she had fraudulently obtained, petitioner forged letters, deeds, and other documents to make it appear as if Rice were alive and had given all of his possessions to her and her sons.

In 1991, petitioner pled guilty in the United States District Court for the District of the Virgin Islands, resulting in her conviction of numerous crimes under both the law of the Virgin Islands and federal law. Under Virgin Islands law, petitioner plead guilty to conspiracy to defraud, forgery, offering false evidence in a civil case, perjury, and selling property obtained unlawfully. Under federal law, petitioner pled guilty to mail fraud, making false statements, and failure to appear. As a result of these guilty pleas, the court sentenced petitioner to four consecutive prison terms. Three of the prison terms were for the federal offenses: 15 months for fraud, 21 months for failure to appear, and 24 months for making false statements. Her fourth prison term, ten years for violating various Virgin Islands territorial laws, was to be served after the completion of the prison terms on the federal offenses. Petitioner has been serving her prison terms in the minimum security camp at FCI Dublin. She completed the prison terms on her federal offenses in 1996, and is now serving her 10-year Virgin Islands sentence as a "boarder" under a contract between the Bureau of Prisons ("BOP") and the Virgin Islands Department of Corrections, which agreement provides for the reciprocal housing of prisoners.

Two of the judgments against petitioner provide for restitution. The judgment relating to petitioner's violations of Virgin Islands law require restitution to the estate of James Rice in the amount of $229,282.78. The judgment in connection with petitioner's federal mail fraud conviction required restitution to the estate of James Rice in the amount of $269,282.78.

In August 1998, while serving her 10-year sentence on the Virgin Islands violations, petitioner escaped from FCI Dublin. Petitioner was a fugitive from justice for four years, until she was captured and returned to FCI Dublin in 2002. She was convicted of escape and

sentenced to an additional two years in federal prison. She will begin serving that sentence when she has completed her 10-year Virgin Islands sentence.

## DISCUSSION

A.   Standard of Review

This court may entertain a petition for a writ of habeas corpus challenging the execution of a federal sentence on the ground that the sentence is being executed "in violation of the Constitution or laws or treaties of the United States." See 28 U.S.C. § 2241(c)(3); United States v. Giddings, 740 F2d 770, 772 (9th Cir 1984).

The court shall "award the writ or issue an order directing the respondent to show cause why the writ should not be granted, unless it appears from the application that the applicant or person detained is not entitled thereto." See 28 U.S.C. § 2243. Summary dismissal is appropriate only where the allegations in the petition are vague or conclusory, palpably incredible, or patently frivolous or false. See Hendricks v. Vasquez, 908 F2d 490, 491 (9th Cir 1990).

B.   Legal Claims

Petitioner claims that: (1) she is entitled to release from prison one year early pursuant to 18 U.S.C. § 3621(e) because she completed the Residential Drug Abuse Treatment Program ("RDAP"); and (2) BOP officials have violated her rights under the Ex Post Facto Clause by continuing to deduct restitution payments from her prison salary.

    1.   RDAP Claim

Petitioner claims she is entitled to early release from prison pursuant to 18 U.S.C. § 3621 because she has completed the RDAP. In order to encourage prisoners to seek substance abuse treatment, Congress provided that the BOP may reduce, by up to one year, the sentence of a prisoner convicted of a nonviolent offense who successfully completes a drug treatment program. 18 U.S.C. § 3621(e)(2)(B). Pursuant to these provisions, the BOP created a comprehensive substance abuse treatment program, the RDAP. See Cort v. Crabtree, 113 F.3d 1081, 1082 (9th Cir. 1997).

3

The RDAP is available to inmates convicted of nonviolent offenses who have substance abuse problems. See Inmate Drug Abuse Programs Manual, as set forth in BOP Program Statement 533.10 and subsequent Change Notices, attached as Smith Decl. Ex. G ("RDAP Manual"). As an incentive to participate in and complete the RDAP, the BOP offers an early release benefit of up to 12 months for inmates who successfully complete the program. Id. The RDAP has three phases: a residential phase, a non-residential phase, and a community-based transition phase. Id. The community-based transition phase involves placement in a community corrections center, or a "halfway house." Id.

Petitioner is not entitled to early release because she did not complete the community-based phase of the RDAP. In order to successfully complete the program, and become eligible for the early release benefit, prisoners must complete each phase in its entirety. See id.; see also Agreement for Participation in RDAP, attached as Smith Decl. Ex. H. Petitioner enrolled in the RDAP prior to her escape from FCI Dublin, completing the residential phase in April 1994, and the non-residential phase in May 1995. See Memorandum for the U.S. Parole Commission, Smith Decl. Ex. I; Director's Response to Administrative Appeal, Smith Decl. Ex. K. Petitioner did not complete the community-based phase of the RDAP, a fact she does not dispute. See id. The community-based transition phase of the RDAP is not available to inmates with a history of escape, such as petitioner, because they are considered flight risks. See RDAP Manual; Response to Administrative Appeal, Smith Decl. Ex. K.

Petitioner appears to be arguing that the BOP must allow her to re-enroll in the RDAP so she can complete the community-based phase and obtain her early release benefit. The Ninth Circuit, however, has held that the BOP may deny an inmate participation in the community-based transition phase of the RDAP, and thus render the inmate ineligible for a sentence reduction under 18 U.S.C. § 3621, if the inmate is a flight risk. See Murphy v. Hood, 276 F.3d 475, 478 (9th Cir. 2001); accord Rublee v. Fleming, 160 F.3d 213, 216-17 (5th Cir. 1988). Here, petitioner's 1998 escape from FCI, and her subsequent four years as a fugitive, provide more than adequate grounds for classifying her as a "flight risk." Consequently, there is nothing improper in the BOP's denying her the opportunity to re-enroll in the community-

4

based phase of the RDAP.

In short, petitioner is not eligible for the benefit of early release under 18 U.S.C. § 3621, available to prisoners who successfully complete all phases of the RDAP, because she did not complete the community-based phase. Nor is she entitled to re-enrollment in the RDAP, because she properly is considered a flight risk after her escape from FCI Dublin.

          2.      Restitution Claim

Petitioner claims that the continued deduction of restitution payments from her prison salary violates her rights under the Ex Post Facto Clause. Petitioner premises this claim on her contention that the deduction of the restitution payments is being made pursuant to the Mandatory Victims Restitution Act ("MVRA"), 18 U.S.C. § 3663A, a law enacted in 1996, after she was sentenced.

Respondent does not dispute that if petitioner were ordered to pay restitution pursuant to the MVRA, such order would present an Ex Post Facto problem. Instead, respondent argues that petitioner's restitution payments are not being made under the MVRA.

Petitioner makes payments toward her restitution fines in the form of monthly deductions from her prison salary. As respondent demonstrates, however, these payments are being deducted pursuant to a voluntary financial planning program for federal inmates, the Inmate Financial Responsibility Program ("IFRP"), in which petitioner voluntarily enrolled in May 2004.[2] See IFRP Statement, Smith Decl. Ex. L; Inmate Financial Contract, Smith Decl. Ex. M. Petitioner presents no evidence, and there is no indication in the exhibits supplied by any party, that petitioner has been ordered to make restitution payments under the MVRA. Given the absence of any evidence or indication that the court or the BOP has imposed any restitution fine or ordered restitution payments pursuant to the MVRA or any other statute

---

[2]The IFRP is a voluntary financial planning program that helps inmates meet their restitution and other court-ordered financial obligations. See IFRP Statement, Smith Decl. Ex. L. Under the IFRP, inmates develop a financial plan with program advisors and agree to make payments on financial penalties or toward restitution. Id. In May 2004, petitioner voluntarily signed up to participate in this program, and agreed to have half of her prison salary applied to her restitution payments during the term of her incarceration. See Inmate Financial Contract, Smith Decl. Ex. M.

enacted after petitioner was sentenced, petitioner's claim under the Ex Post Facto Clause fails.

Petitioner next argues that under the Victim's and Witness' Protection Act ("VWPA"), 18 U.S.C. § 3663, her restitution payments should cease because it has been more than five years since she completed her federal sentence. Petitioner completed her sentences for her federal crimes on June 17, 1996, at which time she began serving her sentence for violating the laws of the Virgin Islands. At the time of petitioner's sentence, the VWPA contained the following provision: "The court may require that such defendant make restitution under this section within a specified period or in specified installments . . . The end of such period or the last such installment shall not be later than . . . five years after the end of the term of imprisonment imposed . . . ." See former 18 U.S.C. §§ 3663(f)(1)-(2). In sentencing petitioner in this case, the United States District Court for the Virgin Islands ordered that petitioner "shall pay restitution to the victim, the estate of James Rice . . . [and the] United States Attorney shall obtain a civil judgment against the defendant." See Judgment and Commitment, and subsequent amendments, Smith Decl. Exs. B-D. At no time did the court order petitioner to pay restitution "within a specified period or in specified installments" under 18 U.S.C. § 3663(f). Id. Consequently, this section of the VWPA, and the five-year limitation it contains, does not apply to petitioner's sentence. Nor are petitioner's payments under the IFRP affected by § 3663. The VWPA provision cited by petitioner states that the five-year limitation applies when the court "require[s]" restitution be paid within a certain time period or in installments. The payments petitioner is making under the IFRP were not required by the court; she enrolled in that program voluntarily. Accordingly, petitioner's restitution payments are not subject to the five-year limitation set forth in the VWPA.

In sum, the deduction of petitioner's restitution payments does not violate her rights under the Ex Post Facto Clause because her payments are not being made under the MVRA. Rather, her payments are being made under the IFRP, a voluntary BOP program. Further, as petitioner has not been ordered to make restitution payments in installments or within a specified time period, such payments under the IFRP are not governed by the five-year limitation provision of the VWPA.

**CONCLUSION**

For the foregoing reasons, petitioner's petition for a writ of habeas corpus is hereby DENIED.

All pending motions are terminated.

The Clerk shall close the file.

IT IS SO ORDERED.

DATED: December 7, 2005

_____
MAXINE M. CHESNEY
United States District Judge